# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO. 4:09-CV-118-M

WARREN C. HELTON, individually and
on behalf of THE WARREN C. HELTON
IRREVOCABLE TRUST, et al.,                                          PLAINTIFFS

V.

AMERICAN GENERAL LIFE
INSURANCE COMPANY, et al.                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by Defendants Old National Bank and Mark Rickelman to dismiss Plaintiffs' claims for fraudulent inducement (Count 8) and civil conspiracy (Count 9). Fully briefed, the matter is ripe for decision. For the reasons that follow, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART.**

## I. BACKGROUND

This case arises out of the nonrenewal of bank loans used to finance life insurance premiums. Plaintiffs Warren C. Helton and John L. Worth, both life insurance agents, purchased life insurance policies from Defendant American General Life Insurance Company ("American General") through its agent Defendant Lawrence A. Rasche. The insurance premiums were to be paid for through loans from Defendant Old National Bank ("ONB"). According to Plaintiffs, Rasche and Defendant Mark Rickelman, then a Vice President of ONB, promised that ONB would provide loans to Plaintiffs each year to finance their annual premiums until Plaintiffs no longer wanted to participate, or until they died. Based on that

guarantee, Worth and Helton purchased life insurance policies from Rasche, and Worth also sold Rasche's life insurance policies to two of his clients, co-plaintiffs James H. Henry, Jr. and Harold D. Milligan.[1]

Plaintiffs brought this suit when ONB failed to renew or, in the case of Henry, approve their loans. Counts 1 and 2 allege that Rasche violated the Kentucky Consumer Protection Act, KRS § 367.110 and KRS § 304.12-010; Count 3 alleges that Rasche and American General violated KRS § 304.12-090; Count 4 alleges that Rasche made negligent misrepresentations; Count 5 claims that Rasche was negligent; Count 6 alleges that American General was negligent in its supervision of Rasche; Count 7 asserts that American General is liable through *respondeat superior*; Count 8 claims that ONB and Rickelman fraudulently induced Plaintiffs into taking out the loans; and Count 9 alleges that all of the Defendants participated in a conspiracy "to accomplish . . . tortious and unlawful acts . . ." related to the selling and financing of the life insurance policies. (Complaint, p. 20, para. 101). ONB and Rickelman now move to dismiss.

## II. STANDARD

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation

---

[1] The promise of loan renewal was significant because the annual premiums were more than Plaintiffs could or would want to pay out of pocket, e.g., Helton's annual life insurance premium was $200,000, Worth's was $159,999.96, and Milligan's was $825,000.

omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1950 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001), which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949, 1950. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

Defendants ONB and Rickelman argue that Plaintiffs' fraudulent inducement claim against them should be dismissed because the claim involves future promises that cannot be reasonably relied upon; because it is barred by "multiple merger and integration clauses"; because the statute of frauds bars the claim; and because the allegations are insufficient to state a claim as a matter of law. ONB and Rickelman also argue that Plaintiffs' civil conspiracy claim against them should be dismissed as barred by the terms of the written loan agreement or as insufficiently pled under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The Court considers the arguments

in turn.

### A. Fraudulent Inducement

To establish a claim for fraud under Kentucky law, a plaintiff must prove "(1) a material misrepresentation; (2) which is false; (3) which was known to be false, or made recklessly; (4) made with inducement to be acted upon; (5) which is acted upon in reliance thereon; and (6) causes injury." Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1444 (6th Cir. 1993). "The plaintiffs reliance, of course, must be reasonable . . . or, as the Restatement states, 'justifiable.'" Flegles, Inc. v. Truserv Corp., 289 S.W.3d 544, (Ky. 2009) (citation omitted). In this case, ONB and Rickelman contend that Plaintiffs' fraudulent inducement claim fails because, inter alia, "[t]he documents signed by each of the Plaintiffs contain multiple provisions stating that the loans were made for a period of one year and that ONB was under no obligation to renew or make additional advances on the loans." (ONB Brief, p. 8). Plaintiffs counter that "Kentucky law clearly permits a party to bring suit for fraud in the inducement, even where the fraudulent statements were oral and the written contract did not include them." (Helton Response to ONB, p. 6) (quotation omitted)). And they say that, accordingly, "parol evidence is admissible to 'establish that [they] had been induced to sign the documents through the fraudulent misrepresentations of the Bank's agents or employees." Id.

The Court agrees with the Defendants. It is true, as Plaintiffs note, that fraudulent inducement or misrepresentation claims are not precluded by merger and integration clauses in Kentucky. Radioshack Corp. v. Comsmart, Inc., 222 S.W.3d 256, 259 (Ky. Ct. App. 2007)

4

(explaining that "neither the parol evidence rule nor the merger and integration clauses in the contract precluded [the plaintiffs] from presenting evidence on their misrepresentation claim" because "false and fraudulent representations made by one of the parties to induce the other to enter into the contract are not merged in the contract."). However, while merger and integration clauses do not per se bar fraud claims, "a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing." Fifth Third Bank v. Waxman, No. 5:09-CV-00033-KKC, 2010 U.S. Dist. LEXIS 66712, at *25 (E.D. Ky. July 6, 2010); Durbin v. Bank of the Bluegrass & Trust Co., No. 2005-CA-001292-MR, 2006 WL 1510479, at *2 (Ky. Ct. App. June 2, 2006) (same); Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc., 113 S.W.3d 636, 640-41 (Ky. Ct. App. 2003) (same); see also Keith v. Robinson, No. 2005-CA-001260-MR, 2006 WL 3524056, *2 (Ky. Ct. App. Dec. 8, 2006) (finding that a fraudulent inducement claim failed because there could be no "justified" reliance on an alleged oral agreement that expressly contradicted the terms of a written agreement).

In Davis v. Siemens Med. Solutions USA, Inc., No. 3:04CV-195-MO, 2007 WL 710133 (W.D. Ky. Mar. 6, 2007), for example, an employee brought suit against his employer when he failed to receive a commission on a sale made by another employee. He argued that he was induced to enter into his employment contract by an "oral[] promise[] . . . that he would receive commissions on all sales made to national accounts, regardless of whether he or another salesperson was directly responsible for making the sale." Id. at *4. The court granted the employer's motion for judgment as a matter of law. In so doing, it

5

explained that "[t]he Compensation and Commission Plan subsequently sent to and accepted by [the employee] . . . stated only that he would receive commissions on sales for which he and he alone was personally and directly responsible." Id. Because the terms of the plan "could reasonably be interpreted in only one way, and that way directly contradicted the oral representations allegedly made by [defendant]," the court held that "it necessarily follows that [the employee's] reliance on the oral representations was not reasonable . . . ." Id.

This case is much the same. Here, Plaintiffs claim that they were fraudulently induced to enter the loan agreements because ONB and Rickelman "assured" them that the bank would "participate in financing Plaintiffs' premiums, *ad infinitum*, until Plaintiffs passed away or Plaintiffs chose to no longer participate." (Complaint, p. 18, ¶ 93). However, the loan documents Plaintiffs signed clearly state otherwise.[2] At the time Plaintiffs executed their respective Promissory Notes with the bank, they each signed individual Letter Agreements that provided:

> 2. The bank is under no obligation, and has made no commitment whatsoever, to renew the Note or to make additional advances or loans with respect to the Policy after the maturity date of the Note.
>
> ***
>
> 5. In the event that Bank, in its sole and absolute discretion elects not to renew the New Note or make additional advances, Borrower and Guarantors will be required to pay Bank amounts due under the New Note, in full. This may mean

---

[2] Henry did not sign any such loan documents. However, he merely alleges that "Rasche represented to [him] that it would be easy for him to purchase . . . a policy . . . and borrow the premiums through financing commitments Rasche had already arranged with Old National . . ." (Complaint, p. 11). He has not alleged that ONB or Rickelman misrepresented anything to him, and so has not stated a fraudulent inducement claim against them.

> that the Borrower and/or Guarantors will be required to refinance obligations evidenced by the New Note with a third party lender and make other arrangements to pay future premiums under the Policy.

(DN 50, Exhibit 2, Appendix C).

Because the terms of these agreements directly contradict the supposed misrepresentations of ONB and Rickelman, i.e., that the insurance-premium-loans would be continuously renewed, Plaintiffs cannot show that they justifiably relied upon the alleged misrepresentations and their fraudulent inducement claim fails as a matter of law.[3] Plaintiffs other arguments in support of dismissal of the fraudulent inducement claim therefore need not be addressed.

**B. Civil Conspiracy**

Plaintiffs also claim that Rickelman, on behalf of ONB, "actively and knowingly participated in complex, misleading, and tortious misconduct, and provided substantial assistance in furtherance of the scheme" by providing financing to Plaintiffs. (Helton Response to ONB, p. 17). A conspiracy is "'a corrupt or unlawful combination or agreement

---

[3] Plaintiffs also cite to Hart v. Fifth Third Bank, Inc., 3:09CV-189-H, 2009 U.S. Dist. LEXIS 88987 (W.D. Ky. Sep. 28, 2009) for the idea that "the question of whether [a plaintiff] reasonably relied on [the defendant's] alleged misrepresentations is one of fact that may not be resolved on a motion to dismiss." Id. at *10. However, Hart addressed whether reliance could be negated by a boilerplate contract term that specified that there could be no reliance; here, of course, it is the fact that the alleged misrepresentation is directly contradicted by a contract term that makes reliance unreasonable. cf. Radioshack Corp., 222 S.W.3d at 262 (explaining that "while the written disclaimers do not preclude a tort action for misrepresentation, such disclaimers are relevant to determine whether a person reasonably relied on the representations . . . . [and concluding that because] any promises or understandings concerning the type of inventory which Radioshack would send to Comsmart and Dean were specifically disclaimed by the franchise agreement . . . [they were] not actionable.").

between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means.'" James v. Wilson, 95 S.W.3d 875, 896 (Ky. Ct. App. 2002) (quoting Smith v. Bd. of Educ., 94 S.W.2d 321, 325 (Ky. 1936)). However, "there is no such thing as a civil action for conspiracy . . . ." Id. at 897. Instead, "the action is for damages caused by acts committed pursuant to a formed conspiracy. In the absence of such acts done by one or more of the conspirators and resulting in damage, no civil action lies against anyone since the gist of the civil action for conspiracy is the act or acts committed in pursuance of the conspiracy, not the actual conspiracy." Id. (citing Davenport's Adm'x v. Crummies Creek Coal Co., 184 S.W.2d 887, 888 (Ky. 1945)).

Defendants argue that "[s]ince the Letter Agreements signed by each of the Plaintiffs expressly and specifically disclaim and refute the facts upon which Plaintiffs now rely, their claims for civil conspiracy fail as a matter of law." (ONB Brief, p. 18). The Court disagrees. Plaintiffs' claim for civil conspiracy in Count 9 is independant of the Count 8 claim for fraudulent inducement. The claimed conspiracy is not premised on ONB's alleged wrongful failure to renew the Plaintiffs' loans, or at least not entirely. Rather, the conspiracy claim is based in part on Plaintiffs' allegations that "Rickelman acted in conjunction with Rasche . . . aided and abetted him as his financing partner in the sale of life insurance. . . agreed to induce Plaintiffs into providing them financing through Old National so that Rasche could sell life insurance products pursuant to the scheme . . . [and] [t]hat Old National and Rickelman were . . . anxious[] to provide loans . . . because Old National was assured that all of its principal and interest would be repaid." (Complaint, pp. 4-5). In light of these

8

allegations, the Court concludes that the Letter Agreement does not preclude Plaintiffs' civil conspiracy claim.

Finally, ONB and Rickelman argue that Plaintiffs' civil conspiracy claim should be dismissed because it is not "plausible" under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). First, they say that ONB could not have rendered "substantial assistance" to the conspiracy merely by "'informing Plaintiffs that it would no longer finance' their premium payments," since ONB "specifically advised [Plaintiffs] that the loans might not be renewed." (ONB Brief, pp. 17-18). And second, they suggest that there can be no "reasonable inference that [they are] liable for the misconduct alleged," since Rasche, the seller of the life insurance policies, was not ONB's agent. (ONB Brief, p. 20) (quoting Iqbal, 129 S. Ct. at 1949). These arguments miss the mark. As the just-cited allegations from the complaint make clear, Defendants' purported "substantial assistance" to the civil conspiracy is based on Rickelman's support of Rasche, not on Rasche's conduct directly, and the claim involves more than ONB's failure to renew Plaintiffs' loans because it at least includes ONB's grant of, or intent to grant, the loans in the first instance. Accordingly, the Court will deny Defendants' motion.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to Plaintiffs' claim for fraudulent inducement. It is **DENIED** as to Plaintiffs' claim for civil conspiracy.

9

cc. Counsel of Record