UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:09-CV-00118-JHM

WARREN C. HELTON, individually and on
behalf of THE WARREN C. HELTON
IRREVOCABLE TRUST, et al.                                    PLAINTIFFS

V.

AMERICAN GENERAL LIFE INSURANCE CO.;
AND LAWRENCE A. RASCHE                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Lawrence Rasche's motions for summary

judgment. [DN 268, 270, 272, 278, 279]. Also before the Court is Defendant American General Life

Insurance Company's motion for summary judgment. [DN 281] Fully briefed, these matters are ripe

for decision.  For the following reasons, the Court **DENIES in part** and **GRANTS in part** the

Defendants' motions for summary judgment.

I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no

genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its

motion and of identifying that portion of the record which demonstrates the absence of a genuine

issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party

satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a

genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND

This case stems from the sale of financed premium life insurance plans by Defendants American General Life Insurance Company ("American General") and its agent Lawrence Rasch ("Rasch"). Under these plans the insurance premiums are financed through bank loans. Each insured creates an irrevocable trust, naming a close relative or spouse as Trustee and owner of the policy. Ideally, at the time of the insured's death, the death benefits would be sufficient to repay all borrowed premiums plus interest and still provide substantial insurance proceeds to the beneficiaries.

American General used two premium finance programs, the CMS program and the Tax Track program. Under the CMS program the policyholder borrowed the annual premium and paid the interest out of pocket. Under the Tax Track program, the bank that loans the premium also loans the accumulating interest to the insured and takes a security interest in the cash value of the policy up to the amount of the loan plus accumulated interest. The Plaintiffs financed their life insurance policy through the Tax Track concept of premium financing. This concept was designed by Bill

Gray, a former American General agent, and it is disputed whether the concept was designed exclusively for American General. An annual term rider was supposed to be added to the policy each year to cover the interest that was accumulating. (Bill Gray Dep., Oct. 2, 2012, p. 16 [DN 271-1].) "To cover the shortfall between the cash value and the loan amount expected during the first few years, the insureds are required to deposit funds into an into an interest bearing account as additional collateral." (American General's Mot. Summ. J., p. 5 [DN 281].)

All Plaintiffs received Tax Track illustrations in order to help them understand the proposed policy. The illustrations contained non-guaranteed benefits and values. At issue in the illustrations is Column 8, which is titled "managed account deposit." (See Exhibit 12 [DN 271-11; 271-12; 271-13; 271-14].) Each Plaintiff obtained a letter of credit as supplemental collateral for the premium loans in the amounts specified in Column 8, but no Plaintiff placed cash into an account. Plaintiffs have alleged that they were under the impression that Column 8 of the Tax Track illustration demonstrated the amount of the annual letter of credit, which would decrease over the years. (Statement of Facts, p. 29 [DN 269].)

Warren C. Helton was issued a life insurance policy from American General on June 28, 2007. Mr. Helton and his wife, Belinda Helton (as Trustee), agreed to purchase a policy with a face amount of $3 million and annual premium of $200,000. Mr. Helton obtained financing for his life insurance policy through Old National Bank on June 25, 2007, with a letter of credit in the amount of $225,000. A second loan was obtained on June 25, 2008. On November 28, 2007, the Trust, with Mrs. Helton as Trustee, executed an assignment, assigning the policy to Old National Bank. When financing for additional premium payments was declined, Old National Bank unilaterally surrendered the policy and received the cash value on December 8, 2009. At the time the Second

3

Amended Complaint was filed, Plaintiff Helton and the Helton Trust were indebted to ONB in the amount of $439,995.12 plus interest.

Brian D. Milligan, with Marjorie Lellie as Trustee, applied for a policy from American General which was issued on May 12, 2008. His policy had a face amount of $5 million, and required a premium of $390,000 per year. Mr. Milligan paid the first monthly premium, $32,500, with his own funds. After obtaining a letter of credit in the amount of $220,000, First Financial provided for the remainder of the premium in July of 2008. The life insurance policy was assigned to First Financial Bank. Eventually, First Financial Bank decided not to provide any additional financing and the policy lapsed. At the time the Second Amended Complaint was filed, Brian Milligan and the Brian Milligan Trust were indebted to First Financial in the amount of $421,638.62.

John L. Worth applied for an American General Life Insurance policy on March 15, 2006, and designated his wife, Judy Worth, as Trustee and owner of the policy. The death benefit was $5 million and required a premium payment of $160,000 per year. Mr. Worth obtained financing for the premiums from Old National Bank in August of 2006 after pledging an investment account to ONB. A second loan was provided by ONB on August 1, 2007. Mr. Worth obtained a letter of credit in the amount of $485,000, which was in force between 2007 and 2008. A third loan was provided to Mr. Worth on August 1, 2008. A second letter of credit in the amount of $523,858.40 was obtained and was in force between 2008 and 2009. On August 24, 2006, the life insurance contract was assigned to Old National Bank. After additional financing was denied, Old National Bank unilaterally surrendered the policy to American General on October 13, 2009 for the cash value of the policy. At the time the Second Amended Complaint was filed, Mr. Worth and the Worth Trust were indebted to ONB in the amount of $1,209,743.18.

Harold Dane Milligan was issued a life insurance policy with the face amount of $6,700,325, and an annual premium of $825,000 by American General in April of 2007. The owner of the policy was the Harold D. Milligan Irrevocable Trust, with Donna Milligan as Trustee.  While there are questions about whether Donna Milligan actually was the Trustee, the issue is not relevant for these purposes.  After obtaining a letter of credit in the amount of $670,000, Old National Bank provided the financing for the premiums.  The policy was assigned to Old National Bank on April 30, 2007. After additional financing was denied, Old National Bank unilaterally surrendered the policy and obtained the cash value on December 4, 2009.  At the time the Second Amended Complaint was filed, Dane Milligan and the Dane Milligan Trust were indebted to ONB in the amount of $2,648,403.29.

James H. Henry, Jr. applied for insurance to American General in November of 2007. According to the record, American General issued a policy with a face amount of $5,175,000 on November 28, 2007, however, James Henry never received a copy of the policy.  Sandra Kay Henry was Trustee of the James H. Henry Jr. Irrevocable Trust.  Mr. Henry was unable to obtain financing before the first premium was due and he paid American General $175,000 of his own funds to secure the issuance of the policy.  Financing was never obtained for Mr. Henry, and the policy lapsed May 30, 2009.

The Complaint lists eight causes of action against American General Life Insurance Company ("American General"); First Financial Bank, NA, Inc. ("First Financial"); Lawrence A. Rasche; Mark J. Rickelman; and Old National Bancorp ("ONB").  Count One alleges Rasche violated the Kentucky Consumer Protection Act; Count Two alleges Rasche violated KRS § 304.12-010 which provides that no person shall engage in Kentucky in any practice which is an unfair

method of competition or any unfair or deceptive act or practice in the business of insurance; Count Three alleges that American General and Rasche knowingly permitted and/or offered to make contracts of life insurance, and as inducement to such insurance, gave or offered to give valuable consideration not expressed in the contract; specifically deferred interest on loans made or to be made by Old National Bank in violation of KRS 304.12-090; Count Four alleges that Rasche negligently misrepresented the premium financing scheme; Count Five alleges that Rasche was negligent; Count Six alleges American General was negligent in its supervision of Rasche; Count Seven alleges that American General is vicariously liable for Rasche's actions and liabilities under the doctrine of respondeat superior; and Count Nine[1] alleges civil conspiracy by all Defendants for their tortious and unlawful acts. (Second Am. Compl., [DN 83].) Defendant Rasche has filed motions for summary judgment as to all claims asserted against him by all Plaintiffs. [DN 268, 270, 272, 278, 279.] Defendant American General has also filed a motion for summary judgment as to all claims asserted against it. [DN 281].

In previous opinions, the Court granted summary judgment as to the claims against First Financial, Mark Rickelman and ONB. [DN 222, 223] Therefore, only Defendants American General and Rasche remain.

## III. DISCUSSION

The Court will address each claim asserted in the Second Amended Complaint in turn.

### A. Count One

Count One alleges that Rasche violated the Kentucky Consumer Protection Act because the "life insurance financing scheme used by Rasche to sell life insurance to Plaintiffs constitutes unfair,

---

[1] There are only eight counts stated in the Second Amended Complaint.

unconscionable, false, misleading and/or deceptive acts or practices in the conduct of trade or commerce," resulting in damages to the Plaintiffs.  (Second Am. Compl. [DN 83].)  The KCPA declares unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  K.R.S. § 367.170.  Additionally, the KCPA provides a private remedy to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal," as a result of a violation of KRS § 367.170.  KRS § 367.220(1).  The Kentucky Supreme Court has held that the "purchase of an insurance policy is a purchase of a 'service' intended to be covered by the Consumer Protection Act."  Stevens v. Motorists Mut. Ins. Co., 759 S.W.2d 819, 820 (Ky. 1988).

Defendant Rasche argues that summary judgment on this claim is appropriate because the claim is time-barred by the two-year limitation, and because no privity of contract exists between the Plaintiffs and Rasche.  The Kentucky Consumer Protection Act provides a two year limitation after the violation occurs.  KRS § 367.220(5).  The Plaintiffs filed their claims on January 4, 2011, but Defendant Rasche states that Brian Milligan's policy was issued in April of 2008 [DN 268]; Harold D. Milligan's policy was issued April 13, 2007 [DN 270]; Warren C. Helton's policy was issued June 28, 2007 [DN 272]; James Henry's policy was issued November 30, 2007 [DN 278]; and John Worth's policy was issued March 2006 [DN 279].  Defendant Rasche reasons that any alleged misrepresentations made to Plaintiffs must have occurred prior to the policy issue date, and since the discovery rule does not toll the two-year limitation, this claim is time barred.  (Rasche's Mot. Summ. J., 28 [DN 268] (citing Bennett v. Ford Motor Co., 2008 WL 920745 (W.D. Ky. April 3, 2008).  Additionally, Defendant Rasche argues that the Kentucky Consumer Protection Act provides a private remedy only if privity of contract exists between the parties.  (Id. at 29 [DN 268]

(citing  Kentucky Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc.,

24 F. Supp. 2d 755, 772 (W.D. Ky. Sept. 30, 1998).  Since the Plaintiffs purchased the insurance

policy from American General, and no contract existed between Rasche and the Plaintiffs, Rasche

contends that the Kentucky Consumer Protection Act claim must fail.

      In response, Plaintiffs state that contractual privity does not require the existence of an

actual, written agreement between Rasch and the Plaintiffs.  Plaintiffs argue that they dealt solely

with Rasche, and he arranged the financing, the legal work to create the trusts, and provided the

American General policies.  They contend that the privity requirement of the Kentucky Consumer

Protection Act "may be waived when a consumer is treated as a purchaser for all practical purposes."

(Pls.' Resp., 52 [DN 292] (quoting Alfred v. Mentor Corp., 2007 WL 708631, *7 n.4 (W.D. Ky.

March 5, 2007)).)  Plaintiffs state that they are also in privity with American General, and the privity

between the master and servant creates the liability of American General, and the liability of Rasche

as its agent.

      Kentucky Courts have interpreted the Kentucky Consumer Protection Act to "contemplate

an action by a purchaser against [the] immediate seller," and "that privity of contract exist between

the parties in a suit alleging a violation of the Consumer Protection Act."  Skilcraft Sheetmetal, Inc.

v. Kentucky Machinery, Inc., 836 S.W.2d 907, 910 (Ky. Ct. App. 1992).   "The insured who

purchased the policy is the one who may properly have a claim for unfair practices against the

insurer."  Anderson v. National Sec. Fire and Cas. Co., 870 S.W. 2d 432, 435-36 (Ky. Ct. App.

1993).

      Defendant Rasche points to Massachusetts Mut. Life v. Watson in which a claim under the

Kentucky Consumer Protection Act was asserted against the insurance agent.  2012 WL 4936504

(E.D. Ky. Oct. 16, 2012).  The district court held that the insured entered into a contract with Massachusetts Mutual, not the insurance agent, and the insured could not maintain a claim against the agent under the Kentucky Consumer Protection Act.  Id. at *3.  Similarly, in Wolfe v. State Farm Fire and Cas. Co., the plaintiffs asserted a violation of the Kentucky Consumer Protection Act against the claim's adjuster for State Farm and the district court held that the claim fails because there was no privity of contract between the Plaintiffs and the adjuster.  2010 WL 4930680 (W.D. Ky. Nov. 30, 2010).

In contrast, privity was found in a case involving stolen identity, when debt accumulated at defendant bank after a credit card was issued under the plaintiff's name.  Stafford v. Cross Country Bank, 262 F.Supp. 2d 776 (W.D. Ky., May 8, 2003).  The plaintiffs denied the existence of a contract with the bank, and the bank used that denial to argue there was a lack of privity.  A district court held that the defendant bank's assumption of privity in dealing with the plaintiffs in an effort to collect the debt was enough to establish privity under the Kentucky Consumer Protection Act. Id. at 793.  The court reasoned that to "deny a potential remedy simply because the consumer says he never intended to become a purchaser when, for all practical purposes he was treated as one, would belittle the KCPA's purpose."  Id.

The Court finds that the Plaintiffs' Kentucky Consumer Protection Act claim against Rasche fails for lack of privity.  This case is distinguishable from Stafford.  Here, Plaintiffs are not denying the existence of a contract while Defendants continue to assert the existence of one.  The consumers in this case intended to become purchasers.  The problem with the KCPA claim is that the Plaintiffs entered into a contract with American General, not with Rasche.  Plaintiffs attempt to state that they are also in privity with American General, and Rasche's actions "under the KCPA is imputed to

9

American General under hornbook agency principles." (Pls.' Response, 52 [DN 292].) However, the Amended Complaint only asserts a claim under the Kentucky Consumer Protection Act against Rasche. Accordingly, the claim must fail for lack of privity. The Court does not need to address the statute of limitations claim. Therefore, the Court grants summary judgment in favor of Rasche on Count One.

**B. Count 2**

Count Two in the Second Amended Complaint [DN 83] alleges Rasch violated KRS § 304.12-010. Subtitle 12 of the Insurance Code, Chapter 304 of the Kentucky Revised Statutes, is entitled "Trade Practices and Frauds." The introductory section to that subtitle states

> No person shall engage in this state in any practice which is prohibited in this subtitle, or which is defined therein as, or determined pursuant thereto to be, an unfair method of competition or any unfair or deceptive act or practice in the business of insurance

KRS § 304.12-010. Defendant Rasche argues that this claim must fail because it is merely an introductory section which does not create a private cause of action, and, even if a cause of action is available, the premium financing is a legitimate method of funding a life insurance policy. Defendant Rasche states that even if he misrepresented the length of the financing available to the Plaintiffs, they signed several documents regarding the loans that contradicted any alleged statements made by him. He further argues that the Plaintiffs did not have any problems with the policies until the banks decided not to renew the loans. According to Rasche, the banks' decisions rested on an unprecedented and unforeseen credit crisis, and, as a result, Rasche argues that Plaintiffs can not prove damages from any of his alleged misrepresentations.

In response, Plaintiffs state that among the practices prohibited in Subtitle 12 is:

No person shall make or disseminate orally or in other manner any advertisement,

10

> information, matter, statement, or thing; (4) Containing any assertion, representation,
> or statement with respect to the business of insurance or with respect to any person
> in the conduct of his insurance business, which is untrue, deceptive, or misleading.

KRS § 304.12-020(4).   Plaintiffs argue that there are several details regarding Rasche's misrepresentations and deceptive acts regarding the financed premium life insurance scheme used to sell the life insurance policies.  Additionally, they argue that Rasche should be well aware of the deceptive acts and misrepresentations that Plaintiffs are discussing.

In the Second Amended Complaint, the Plaintiffs state they "have a cause of action for violation of Section 304.12-010 and as a result of the provisions of KRS § 446.070."  (Second Amended Compl. ¶ 74 [DN 83].)  The Kentucky Supreme Court has stated that "KRS 446.070 merely codifies the common law concept of negligence per se.  It applies only if the alleged offender has violated a statute and the plaintiff was in the class of persons which that statute was intended to protect."  Davidson v. American Freightways, Inc., 25 S.W.3d 94, 99-100 (Ky. 2000).  Defendant Rashce points to a Kentucky Court of Appeals case in which the plaintiff's complaint alleged violations of KRS Section 304.12-010, et seq.  Cook v. State Farm Mut. Auto. Ins. Co., 2004 WL 2011375 (Ky. Ct. App. 2004).  The claim was dismissed by the trial court which reasoned the claim was legally deficient, but on appeal the court held that "State Farm is correct in asserting that KRS 304.12-010 is an introductory section to Subtitle 12 of the Insurance Code, but in her complaint, [plaintiff] also alleges a violation of KRS 304.12-020[.]" Id. at 6.  Defendant Rasche reasons that because KRS § 304.12-010 is an introductory section, it does not provide a cause of action.

While Plaintiffs did not list any other section of subtitle 12 in the Amended Complaint, the Court is not convinced that they have failed to state a cause of action because they listed an introductory section.  The wording of KRS § 304.12-010 makes it clear that no person shall engage

in any practice that is prohibited by all sections of subtitle 12.  Plaintiffs have made it apparent that they believe Rasche was deceptive in his insurance business and that deception resulted in their damages since most Plaintiffs owe significant amounts of money to banks, and are unable to afford the premiums on their life insurance policies.  Furthermore, in <u>Hall v. MLS Nat. Medical Evaluations, Inc.</u>, the plaintiffs alleged a claim under KRS § 304.12-010.  2008 WL 973097 (E.D. Ky. April 8, 2008).  The district court denied the defendant's motion for summary judgment, stating that the plaintiff had established the essential elements of causation and allowed the claim under KRS § 304.12-010 to continue being litigated.  <u>Id.</u> at *4.

As to causation, "in order for a statutory violation to become negligence per se, the plaintiff must be a member of the class of persons intended to be protected by the regulation, and the injury suffered must be an event which the regulation was designed to prevent."  <u>Bays v. Summitt Trucking, LLC</u>, 691 F.Supp.2d 725, 733 (W.D. Ky. Feb. 25, 2010) (quoting <u>Carman v. Dunaway Timber Co., Inc.</u>, 949 S.W.2d 569, 570 (Ky. 1997).  "[N]egligence per se is merely a negligen[ce] claim with a statutory standard of care substituted for the common law standard of care. . . . Therefore, just as in ordinary negligence claims, causation and injury must still be proven in negligence per se claims."  <u>Powell v. Tosh</u>, 2013 WL 900152, *13 (W.D. Ky. March 8, 2013) (internal citations omitted).  Generally, legal causation is a question of fact.  <u>See</u> <u>Cummins v. BIC USA, Inc.</u>, 835 F.Supp. 2d 322, 325-36 (W.D. Ky. Dec. 19, 2011).

Although Defendant Rasche states that the Plaintiffs have not established causation due to the banks' superseding decisions to not renew the loans, the Plaintiffs  have testified that Defendant Rasche repeatedly referenced that he had the ability to get financing from other banks.  While it is not disputed that the loan documents with Old National Bank and First Financial Bank, as well as

Letter Agreements, were limited to annual terms, and subject to renewals, each Plaintiff testified that Rasche told them there would be no out of pocket expenses and several banks were interested in financing the insurance policies.  (John Worth Dep. 176, Oct. 25, 2011; Worth Dep. 31, 53, Nov. 30, 2011 [DN 273-1]; Warren Helton Dep. 99, 274, 343-44, Aug. 18-19, 2011 [DN 271-15]; James Henry Dep. 57, 58, 71, 87-88, Jan. 31, 2012 [DN 271-16]; Harold Dane Milligan Dep. 65, 151, July 24, 2012 [DN 273-4]; Brian Milligan Dep. 16, 26, 39, Sept. 9, 2011 [DN 273-2].)  Furthermore, Plaintiffs entered into these policies with the understanding that they only needed letters of credit as collateral for the Tax Track system, as opposed to depositing cash in an account as collteral.  The Court concludes that there are questions of fact as to whether Defendant Rasche engaged in deceptive or misleading acts that caused damage to the Plaintiffs.  Therefore, the Court finds that summary judgment is inappropriate as to Count Two.

### C. Count Three

In Count Three, Plaintiffs allege that both Rasche and American General "knowingly permitted and/or offered to make contracts of life insurance, and as inducement to such insurance, gave or offered to give valuable consideration not expressed in the contract; specifically deferred interest on loans made by Old National and First Financial" in violation of KRS § 304.12-090. (Second Am. Compl. ¶ 78 [DN 83].)  The only subsection that applies to life insurance states:

> Except as expressly provided by law no insurer, employee, or representative shall knowingly permit or offer to make or make any contract of life insurance, life annuity or health insurance, or agreement as to such contract other than as plainly expressed in the contract issued thereon, or pay or allow, or give or offer to pay, allow or give, directly or indirectly, as inducement to such insurance, or annuity, any rebate of premiums payable on the contract, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not expressed in the contract.

KRS § 304.12-090(3).

13

Defendant Rasche argues that this claim must fail because the loans made by the banks to finance the life insurance polices do not constitute "rebate of premiums" or "valuable consideration," as discussed in the statute. He states that premium financing is a legitimate practice of funding a life insurance policy. (Rasche Mot. Summ. J., 35 [DN 268] (citing Transamerica Ins. Fin. Corp. v. North Am. Trucking Ass'n Inc., 937 F.Supp. 630 (W.D. Ky. Sept. 20, 1996)).) Defendant American General also argues that Kentucky law recognizes and authorizes the use of premium financing for the purchase of insurance. Furthermore, American General states that the language of the statute applies to violations by either Rasche or American General, but the banks were the ones that actually loaned the money, and deferred interest payments. The loan documents, American General contends, did not actually give a promise of deferred interest, but stated that all principal and interest was due after one year. Lastly, American General states that Plaintiffs have suffered no damages as a result of any violation of KRS § 304.12-090(3).

Plaintiffs failed to respond to these arguments. "When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion." Ctr. For Biological Diversity v. Rural Utils. Serv., 2009 WL 3241607, at *3 (E.D.Ky. Oct. 2, 2009) (citing Humphrey v. U.S. Attorney General's Office, 279 F.App'x 328, 331 (6th Cir. 2008)). The Court agrees that the deferred interest on loans made by Old National and First Financial do not constitute the valuable consideration or inducement as discussed in KRS § 304.12-090(3). Therefore, the motions for summary judgment as to Count Three are granted.

**D. Count Four**

The Plaintiffs have alleged that Rasche negligently misrepresented that the premium

financing scheme "was suitable and appropriate for Plaintiffs, given their age, health, income, investment goals and estate planning objectives." (Second Am. Compl. ¶ 81 [DN 83].) Plaintiffs also state they relied upon the expertise of Rasche to select the financing mechanism for the policies. (Id., ¶ 82 [DN 83].) All parties agree that the elements of negligent misrepresentation are set forth in the Restatement (Second) of Torts, which states:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (2d) of Torts § 552(1) (1977) (see Presnell Const. Managers, Inc. V. EH Const., LLC, 134 S.W.3d 575 (Ky. 2004) (Kentucky Supreme Court adopted § 552's standards for negligent misrepresentation)).

Defendant Rasche states that the negligent misrepresentation claim fails as a matter of law because 1) Plaintiffs did not rely on any verbal representations made by Rasche; 2) Plaintiffs have no evidence that Rasche made any untrue statements knowing that they were false; and 3) a negligent misrepresentation claim cannot be based upon a promise or an opinion relating to a future act or event. Defendant Rasche argues that an insurance agent does not owe a prospective insured a fiduciary duty, and any alleged oral representations contradicted with Letter Agreements which state that the loan terms are only for one year. Defendant Rasche states that due to the unexpected "global economic meltdown and credit crisis that began in 2008, Plaintiffs likewise have no evidence to suggest, much less prove, that Rasche made these alleged statements recklessly." (Rasche's Mot. Summ. J., 26 [DN 270].) Furthermore, Defendant Rasche argues that "'a party's intent to perform a promise or an agreement cannot form the basis of a negligent misrepresentation

claim[.]" (Id. at 27 [DN 270] (quoting PCR Contractors, Inc. v. Danial, 354 S.W.3d 610 (Ky. Ct. App. 2011)).) He cites to the loan documents and the Letter Agreements between Plaintiffs and the banks that limited the terms of the loans as evidence that the Plaintiffs could not have relied on Rasche's statements in making their decision to take out loans to fund the insurance policies.

Additionally, Defendant American General reiterates that this claim must fail because it requires proof of an actionable misrepresentation, not opinions or predictions. (American General Mot. Summ. J. 26 [DN 281] (citing Ashland, Inc. v. Oppenheimer & Co., Inc., 648 F.3d 461, 473 (6th Cir. 2011)).) American General states that any predictions or statements about future financing are mere opinions and predictions. American General also argues that no Plaintiff testified that Rasche literally and affirmatively represented that the policies were 'suitable' for the Plaintiffs. (Id. at 27 [DN 281].)

In response, Plaintiffs cite to comment e of section 552, which states that:

The particulars in which the recipient of information supplied by another is entitled to expect the exercise of care and competence depend upon the character of the information that is supplied. When the information concerns a fact not known to the recipient, he is entitled to expect that the supplier will exercise that care and competence in its ascertainment which the supplier's business or profession requires and which, therefore, the supplier professes to have by engaging in it.

Restatement (2d) of Torts § 552, comment e (1977). Plaintiffs state that Defendant Rasche held himself out to be an expert in the field of premium financed life insurance, and gave the Plaintiffs affirmative representations regarding financing that exceeded mere opinions. Citing to a Rhode Island Superior Court case, Plaintiffs argue that Rasche's promises and predictions of financing are actionable because they were based on Rasche's special knowledge. (Pls.' Resp. 38 [DN 292] (citing Dryvit Systems, Inc. v. Feldspar Corp., et al, 1995 WL 941376 (R.I. Super. Ct. Jan. 19, 1995)).) Additionally, in their Statement of Facts, Plaintiffs allege that Rasche understated the

16

amount of additional collateral required for the premium loans as shown in Column 8 of the Tax Track Illustrations. (Statement of Facts, 19 [DN 269-3].)  Not only did he understate the amount required, but Plaintiffs argue that the Tax Track illustrations required funds to be placed in a managed deposit account, as opposed to letters of credit.  (Id. at 28, 33 [DN 269-3] (citing John Worth Dep.16-18, Nov. 30, 2011 [DN 273-1].)  Plaintiffs state that if they had been required to place funds in a managed deposit account they would have been unable to obtain the loans and financing.

Under Kentucky law, a plaintiff asserting negligent misrepresentation must prove that: 1) the transaction at issue is one in which the defendant had a pecuniary interest; 2) the defendant supplied false information; 3) the information was supplied for others' guidance in their business transactions; 4) the defendant failed to exercise reasonable care in communicating the information; 5) the plaintiff acted in reliance thereon; and 6) the false information caused injury.  Presnell, 134 S.W.3d at 580-82.  Importantly, "a misrepresentation to support an allegation of fraud must be made concerning a present or pre-existing fact, and not in respect to a promise to perform in the future."  Filbeck v. Coomer, 182 S.W.2d 641, 643 (Ky. 1944).

The Court agrees that the Plaintiffs do not have a negligent misrepresentation claim regarding Defendant Rasche's alleged statements about future financing.  It is not disputed that Plaintiffs have provided testimony that Rasche represented that financing was not an issue, he had banks lined up to provide funding, and they would never have to pay out of pocket expenses for the premiums.  The loan documents and the Letter Agreements that the Plaintiffs signed, however, clearly stated the terms of the loans.  For example, Brian D. Milligan's Letter Agreement states that "[t]he term of the note is one (1) year[,]" and "[t]he Bank is under no obligation, and has made no commitment whatsoever, to renew the Note or to make additional advances or loans with respect

17

to the Policy or otherwise after the maturity date of the Note." (Letter Agreement [DN 268-14].) The Letter Agreements make clear that if the banks' elect not to renew the loans, the amounts due must be paid in full. Additionally, the Letter Agreement states that the "undersigned acknowledge and agree that neither Rasche nor any other insurance agents involved in the issuance of the policy is an employee, agent or representative of the Bank and has no authority whatsoever to bind Bank to extend or renew any credit accommodation to Borrower or Guarantors or any other third party or to make any representations with respect to Bank." (Id. [DN 268-14].) The Letter Agreements are signed by the Plaintiffs, including the Trustees, as well as Defendant Rasche. (See Brian D. Milligan Letter Agreement [DN 268-14]; Harold D. Milligan Letter Agreement [DN 270-11]; Warren C. Helton Letter Agreement [DN 272-14]; John L. Worth Letter Agreement [DN 279-11].) As the Court has stated previously, "a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing." Fifth Third Bank v. Wasman, No. 5:09-CV-00033-KKC, 2010 U.S. Dist. LEXIS 66712, at *25 (E.D. Ky. July 6, 2010); Durbin v. Bank of the Bluegrass & Trust Co., 2006 WL 1510479, at *2 (Ky. Ct. App. June 2, 2006); Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc., 113 S.W.3d 636, 640-41 (Ky. Ct. App. 2003). The Court concludes that Defendant Rasche's statements regarding financing are promises to perform in the future and are contradicted by the written Letter Agreements. Therefore, the negligent representation claims as to promises of future financing must fail.

However, the Second Amended Complaint alleges that Defendant Rasche represented to the Plaintiffs that the premium financing scheme was appropriate for the Plaintiffs, even given their income. The Court finds that the Plaintiffs have produced sufficient evidence from which

18

reasonable jurors could infer that Defendant Rasche made misrepresentations about present or pre-existing facts concerning the figures in Column 8 of the tax track illustrations presented to the Plaintiffs by Rasche, as well as misrepresentations regarding the required collateral.  (See Statement of Facts, 28 [DN 269-3].)  Plaintiffs have testified that they were told by Defendant Rasche that Column 8 represented the amount of the required letter of credit.  Helton testified that he was told that his "letter of credit would decrease over the years most likely after four or five years, the cash value would exceed the surrender value of the policy and [he] could do away with [his] letter of credit."  (Helton Dep. p. 552-53 [DN 271-15].)   Plaintiffs assert that Column 8, in reality, demonstrated not a letter of credit but a cash deposit to be made into an account which would accumulate interest throughout the life of the policy, serving as collateral for the loan.  (Statement of Facts, p. 29 [DN 269-3] (citing Kelly Schlachter Aff. [DN 271-2] and Jason Worth Aff. [DN 274-2]).)  Plaintiff Worth testified that at the time he realized that the financing was not going according to plan, he was in discussions with Kelly Shlachter, Jason Worth and Mark Rickleman about problems with the line of credit and collateral. (John Worth Dep. 17-18, Nov. 30, 2011 [DN 273-1].)  Plaintiff Worth admits in his deposition, however, that he can not answer the specifics of the problem.   In his reply, Defendant Rasche states that the affidavits that accompany Plaintiffs' response largely contradict the Plaintiffs' prior deposition testimony and should be excluded as a matter law. (Rasche Reply, p. 7 [DN 305].)  As an example of a contradiction, he states that Brian Milligan was asked to disclose all misrepresentations made by Rasche and he never once mentioned the collateral issue, but yet was able to articulate the issue in his affidavit.  (Id. at 9 [DN 305].)  The Court does not find that the affidavits contradict the depositions, but the depositions demonstrate a lack of understanding on the part of the Plaintiffs.  Therefore, the Court concludes that the

Plaintiffs have alleged sufficient evidence to create a genuine issue of material fact as to whether Defendant Rasche negligently misrepresented to the Plaintiffs the collateral needed for the respective life insurance policies.

### E. Count Five

The Plaintiffs allege that Defendant Rasche was negligent in several different ways, specifically: 1) Rasche failed to consider or make arrangements for additional or alternative financing; 2) Rasche knew that the life insurance policies were not suitable for the Plaintiffs; and 3) Rasche was encouraged to sell the unsuitable products to Plaintiffs because of American General's commission structure.  (Second Am. Compl. ¶ 89, 90 [DN 83].)  To succeed on a claim of negligence, the plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached its duty, and (3) the breach proximately caused the plaintiff's damages. Mullins v. Commonwealth Life Insur. Co., 839 S.W.2d 245 (Ky.1992).  The Supreme Court of Kentucky has held that, in general, insurance brokers and agents owe only a standard duty of reasonable care to their clients.  See Associated Ins. Service, Inc. v. Garcia, 307 S.W.3d 58, 63 (Ky. 2010).  However, "an insurer may assume a duty to advise an insured when: (1) he expressly undertakes to advise the insured; or (2) he impliedly undertakes to advise the insured." Mullins, 839 S.W.2d at 248; see also Dotson v. Grange Mut. Cas. Co., 2010 WL 1133337 (Ky. Ct. App. 2010). "An implied assumption of duty may be present when: (1) the insured pays the insurance agent consideration beyond a mere payment of the premium; (2) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advise is being sought and relied on; or (3) the insured clearly makes a request for advice." Mullins, 839 S.W.2d at 248.

Defendant Rasche argues that there is no implied assumption of duty in this case since Rasche's compensation was limited to commissions and there was no long-standing relationship between Rasche and the Plaintiffs. Even if Defendant Rasche did breach a duty to the Plaintiffs, he states that the claim still fails because the breach was not the legal cause of Plaintiffs' alleged damages. Defendant Rasche contends that the banks' decisions not to renew the loans is a superseding cause that precludes liability.

American General also argues that there is no testimony that Defendant Rasche expressly undertook to advise Plaintiffs, and there is no evidence to support a finding of an implied duty to advise. Defendant American General points out that two of the Plaintiffs in the case were licensed life insurance agents as further evidence that Rasche lacked a duty to advise. Additionally, American General states that "in alleging that Rasche owed them a duty to provide a 'suitable' transaction for their needs, Plaintiffs are improperly conflating the duties that exist in the sale of securities with sales of life insurance policies." (Am. General Mot. Summ. J., 28 [DN 281].) As to causation, American General states that the banks' decisions not to renew the loans occurred after any alleged negligence by Rasche; neither Rasche or American General had any connection with the banks' decisions; and, lastly, the banks' decision not to renew the loans was unforeseeable. American General reasons that all of the Plaintiffs' damages developed because of the banks' independent decisions not to renew the loans, and Rasche's conduct is not enough to constitute proximate cause.

Plaintiffs respond arguing that Rasche held himself out as an expert in financed premium insurance, and stated he had access to all the necessary elements, including the financing, the policy and the trust attorney. The expertise, Plaintiffs state, induced them to let Defendant Rasche make

the decisions, misrepresenting the nature of the cost of coverage and collateral. Plaintiffs correctly state that a breach of duty is ordinarily a question of fact for the jury to decide. See Pathways, Inc. v. Hammons, 113 S.W.3d 85, 89 (Ky. 2003).

The Court finds that there is ample evidence that Defendant Rasche assumed a duty to advise the Plaintiffs. Plaintiffs have provided evidence that Defendant Rasche provided the financing at Old National and First Financial, and was present when the Plaintiffs signed their loan documentation. There is testimony that it was Rasche's idea for each policyholder to establish a trust and Rasche made all the arrangements. (Statement of Facts, 18 [DN 269-3].) Plaintiffs John Worth, Helton, James Henry, and Brian Milligan have all testified that they never even met with the attorney who established the trusts. (Id. at 18 [DN 269-3].) "When an insurance company or an agent 'holds itself out' to the public as a counselor and/or advisor, the scope of duty to advise is commensurate with the obligation assumed by the insurance company or agent selling the insurance." Mullins, 839 S.W.2d at 249. In the evidence provided by the Plaintiffs, it appears they made very few decisions, and were at the direction of Defendant Rasche. As pointed out by American General, some of the Plaintiffs were insurance agents themselves, however, this was more than a simple purchase of life insurance as the evidence suggests that Defendant Rasche advised them through all aspects of the premium life insurance financing. Therefore, the Court finds that there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advise is being sought and relied on, and Defendant Rasche had an implied assumption of duty to advise the Plaintiffs.

As stated previously, the breach of that duty is a question of fact for the jury. However, legal causation presents a mixed question of law and fact. Pathways, 113 S.W.3d at 89. "The court has

22

the duty to determine 'whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff.'" Id. at 92 (quoting Restatement (2d) of Torts § 431(1)(a)).   While Defendant Rasche argues that the banks' decisions to no longer provide financing is a superseding cause, the Court finds that there are issues upon which the jury may reasonably differ as to whether Rasche's conduct was a substantial factor in causing the Plaintiffs harm as he advised them about the life insurance policies and the collateral needed to obtain the financing. Therefore, the Court denies Defendant Rasche's motion for summary judgment as to the negligence claim.

### F. Count Six

In Count Six, Plaintiffs allege that American General had a duty to supervise and monitor the conduct of Defendant Rasche who was selling life insurance to members of the public.  It is further alleged that American General highly motivated agents to sell the premium-financed life insurance product by providing extremely large commissions to agents. "Kentucky law recognizes that an employer can be held liable for the negligent supervision of its employees." Booker v. GTE.net LLC, 350 F.3d 515, 517 (6th Cir. 2003).  "In recognizing the tort of negligent supervision, Kentucky has adopted the Restatement (Second) of Agency § 213[.]" Id.  As the comments to Section 213 suggest, "an employer may be held liable for negligent supervision/training only if he or she knew or had reason to know of the risk that the employment created." Buckminister v. Arnold, 2008 WL 2168882, *2 (W.D. Ky. May 23, 2008).  Therefore, Plaintiffs must put forth evidence that Defendant American General knew or should have known of the risk that employment of Defendant Rasche created.

Defendant American General argues that this claim must fail as a matter of law because there

23

is no Kentucky case authority or statute that establishes a duty on the part of insurance companies to supervise the activities of agents; nor is there a duty on the part of insurance companies to train their agents. (American General's Mot. Summ. J., 18 [DN 281] (citing <u>Pan-American Life Ins. Co. V. Roethke</u>, 30 S.W.3d 128 (Ky. 2000)).) Additionally, American General argues that there is no evidence that American General was aware of any of Rasche's conduct or the details of the premium financing arrangement. Without evidence that American General had reason to know of the risk that the employment of Rasche created, American General states that Plaintiffs have not met their burden as to the negligent supervision claim. (Id. at 18 [DN 281] (citing <u>Booker</u>, 350 F.3d 515).)

Plaintiffs respond arguing that Defendant Rasche was American General's agent and Defendant American General assisted him and knew of every policy he sold. Plaintiffs allege that the Tax Track financed premium program was developed by an American General life insurance agent, and American General discussed it in its published documents. (Statement of Facts, p. 2 [DN 269-3] (citing Exhibit 11 [DN 271-10]; Bill Gray Dep., p. 62 [DN 271-1]).) Additionally, testimony sugges that the Tax Track structure was only for individuals with a high net worth. (Id. at 2 [DN 269-3].) Plaintiffs have provided testimony that Rasche did not have access to the software needed to create collateral analysis for the Tax Track program, and would have to obtain this information from American General. (Bill Gray Dep. 69-71 Oct. 2, 2012 [DN 271-1].) Furthermore, they argue that American General made the decision whether to issue an insurance policy after receiving the information contained in the application.

American General states that "underwriters are encouraged to examine whether or not a premium is affordable in order to prevent the possible early lapse of a policy," and there appears to be material issues of fact that suggest that the life insurance policies sold to the Plaintiffs were not

24

affordable. (American General's Reply, p. 8, fn 3 [DN 310].)[2]  In asking the question of whether American General knew or had reason to know of the risk the employment of Rasche created to the Plaintiffs, there is evidence that the Plaintiffs did not meet the financial requirements of the Tax Track Program, and a financial loss was a risk.  This evidence is relevant to the claim of negligent supervision.  Section 213 of the Restatement (Second) of Agency states that "[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others; [or] (c) in the supervision of the activity[.]" Restatement (Second) of Agency § 213(1958).  As there is evidence that American General was aware of the requirements of the Tax Track Program and approved the sale of the life insurance to the Plaintiffs, the Court finds that there are material issues of fact as to whether American General knew or had reason to know of the risk the employment of Rasche created.  Therefore, summary judgment as to Count Six is in appropriate.

### G. Count Seven

Plaintiffs allege that American General is vicariously liable for the actions of Rasche under the doctrine of respondeat superior.  (Second Am. Compl. ¶ 103 [DN 83].)  As the Court has previously held that Defendant Rasche owed Plaintiffs a duty to advise them, and there are material issues of fact as to the negligent misrepresentation claim and the negligence claims against Rasche, the Court will only address American General's claim that Rasche's actions relating to the financing arrangement were not within the scope of his agency.

---

[2] The Court notes Defendant American General's motion to exclude unasserted claims related to underwriting and issuance of the policies, and in that regards acknowledges that it will not allow any new claims except for the eight listed in the Second Amended Complaint.  (See American General's Motion to Exclude Unasserted Claims [DN 282].)

Defendant American General states that for "an act to have been committed within a 'scope of authority,' the act must have been committed 'while the employee was engaged in furthering his employers' interests, without any deviation by the employee to a pursuit of his own business or interest, and there must be a general similarity between the tortious act committed and the usual, ordinary, everyday acts commonly pursued by the employee in prosecuting the regular routing of his employment." (American General's Mot. Summ. J., 20 [DN 281-1] (citing Patterson v. Blair, 172 S.W.3d 361, 368 (Ky. 2005). Defendant American General argues that the Producer Agreement entered into with Rasche limits Rasche's authorized acts.   There is no evidence, Defendant American General states, that suggests that Plaintiffs believed that Rasche was authorized by American General to arrange for premium financing.  Furthermore, Defendant American General argues that there is no evidence that Plaintiffs reasonably relied on any of Rasche's actions.

Plaintiffs state that "[i]n Kentucky, by case law and by statute, anyone who solicits and receives applications for insurance on behalf of an insurance company is an agent of the company, 'anything in the policy or application to the contrary notwithstanding.'" (Pls.' Response, p. 28 [DN 292] (Roethke, 30 S.W.3d at 131)).) They also point to a statute in Kentucky's insurance code, which states:

> Any insurer will be liable for the acts of its agents when the agents are acting in their capacity as representatives of the insurer and are acting within the scope of their authority.  Licensed individuals designated by a business entity to exercise the business entity's agent license shall be deemed agents of the insurer if the business entity holds an appointment from the insurer.

KRS § 304.9-035. In the alternative, Plaintiffs state that the question of Rasche's agency is a question of fact to be determined by the jury.  Plaintiffs argue that "[w]hen it is a matter of some difficulty to determine what acts of an agent are or are not within the apparent scope of his agency

26

of employment, courts generally hold that the question is one of fact, to be determined by a jury." (Id. at 33 [DN 292] (citing Roethke, 30 S.W.3d at 132).)

"KRS 304.9-035 and settled principles of agency law provide that an insurer, as principal, is liable for the acts of its agents acting within the scope of their authority." Roethke, 30 S.W.3d at 132 (citing Motorists Mut. Inc. Co. v. Richmond, 676 S.W.2d 478, 481 (Ky. Ct. App. 1984)). The insurance company is "only liable when the agent acts within the scope of his authority, the insured reasonably relies upon that act, and the reliance constitutes the cause of the insured's damage." Id., at 132. If a servant "acts from purely personal motives . . . which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." Patterson, 172 S.W.3d at 369.

The Court finds that there is sufficient evidence to suggest Defendant Rasche was acting within the scope of his authority as an agent for Defendant American General while he was selling the premium life insurance policies to Plaintiffs. First, while Defendant Rasche did receive commissions from Defendant American General, the sale of the policies was not motivated for personal motives, as the sale of the policies benefitted Defendant American General as well. Defendant Rasche's conduct appears to be the usual, ordinary, everyday acts commonly pursued by an insurance agent engaged in selling premium financed life insurance policies. Therefore, the Court finds summary judgment inappropriate as to Count Seven.

### H. Count Nine[3]

Count Nine alleges that Defendant Rasche and Defendant American General acted tortiously and unlawfully pursuant to a continuous concert of action. (Second Am. Compl., ¶ 105 [DN 83].)

---

[3] There are only eight claims listed in the Second Amended Complaint [DN 83].

27

Plaintiffs state that the conspiracy in which Defendants engaged was not completed until the Banks informed Plaintiffs that they would no longer finance the insurance premium scheme. (Id. ¶ 106 [DN 83].)  Two separate entities must be present for a conspiracy to exist. Doherty v. American Motors Corp., 728 F.2d 334, 339 (6th Cir.1984).  A conspiracy does not exist when a corporation is "acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." Id., quoting Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir.1978).  The basis for this is that "[a] corporation cannot conspire with itself" any more than a single person can.  Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir.1952).  "[I]t is the general rule that the acts of the agent are the acts of the corporation." Doherty, 728 F.2d at 339.

Defendant Rasche argues that the civil conspiracy claim must fail for three reasons: 1) Rasche is entitled to summary judgment on each of Plaintiffs' underlying tort claims; 2) Plaintiffs have failed to produce any evidence regarding an agreement between Rasche and American General; and 3) under Kentucky law, an agent and principal cannot conspire with one another.  Defendant American General reiterates Defendant Rasche's three reasons, as well as stating that a conspiracy claim cannot be based upon negligence.  Plaintiffs failed to address the conspiracy claim in their response.

In Court Orders dated July 12, 2012, this Court granted summary judgment to Defendants First Financial Bank, Old National Bancorp, and Mark Rickelman. [DN 222; DN 223].  The only Defendants left are American General and its agent, Lawrence Rasche.  As an agent of American General, Rasche could not have conspired with American General.  Therefore, Plaintiffs have not stated a claim for conspiracy on which they could prevail.  The Court grants summary judgement as to Count Nine.

**I. Claims Asserted by Plaintiff James Henry**

In its motion for summary judgment, Defendant American General argues that since Plaintiff James Henry did not obtain a loan for premiums from ONB or FFB, and paid money out of pocket for the first premium, his claims are barred by the voluntary payment doctrine.  Defendant American General states that under Kentucky law:

> The well-settled rule as to voluntary payments . . . is [e]xcept where otherwise provided by statute, a party cannot, by direct action or by way of set-off or counter claim, recover money voluntarily paid with a full knowledge of all the facts, and without any fraud, duress, or extortion, although no obligation to make such payment existed.

(American General's Mot. Summ. J.,  38 [DN 281] (quoting Am. Nat. Assur. Co. of St. Louis, Mo., v. Ricketts, 19 S.W.3d 1071, 1072 (Ky. 1929)).)

As Plaintiffs have alleged that they did not have full knowledge of all the facts of the premium financing arrangement, there are material issues of fact as to whether James Henry voluntarily paid the first premium of $175,000.  Therefore, summary judgment as to Plaintiff James Henry's claims is not appropriate.

29

**IV. CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED** that the  Defendant Lawrence

Rasche's motions for summary judgment. [DN 268, 270, 272, 278, 279] and Defendant American

General Life Insurance Company's motion for summary judgment [DN 281] are **DENIED in part**

and **GRANTED in part**.  Defendants' Motions for Leave to Exceed Page Limit [DN 304, 306] are

**GRANTED.**

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 17, 2013

cc: counsel of record

30