UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:09-CV-00118-JHM

WARREN C. HELTON, individually and on
behalf of THE WARREN C. HELTON
IRREVOCABLE TRUST, et al.                                                    PLAINTIFFS

V.

AMERICAN GENERAL LIFE INSURANCE CO.;
AND LAWRENCE A. RASCHE                                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Lawrence Rasche's motion to exclude the opinions and testimony of Plaintiffs' expert, Emily Will [DN 277] and Defendant American General's motion to exclude expert testimony of Richard M. Weber, Burke A. Christensen and Emily J. Will. [DN 284].  Fully briefed, these matters are ripe for decision.

**I. BACKGROUND**

This case stems from the sale of financed premium life insurance plans by Defendants American General Life Insurance Company ("American General") and its agent Lawrence Rasch ("Rasch").  Under these plans the insurance premiums are financed through bank loans.  Each insured creates an irrevocable trust, naming a close relative or spouse as Trustee and owner of the policy.  Ideally, at the time of the insured's death, the death benefits would be sufficient to repay all borrowed premiums plus interest and still provide substantial insurance proceeds to the beneficiaries.

Five causes of action remain in this case against American General Life Insurance Company ("American General"); and Lawrence A. Rasche.  Count Two alleges Rasche violated KRS §

304.12-010 which provides that no person shall engage in Kentucky in any practice which is an unfair method of competition or any unfair or deceptive act or practice in the business of insurance; Count Four alleges that Rasche negligently misrepresented the premium financing scheme; Count Five alleges that Rasche was negligent; Count Six alleges American General was negligent in its supervision of Rasche; and Count Seven alleges that American General is vicariously liable for Rasche's actions and liabilities under the doctrine of respondeat superior. (Second Am. Compl., [DN 83].)

## II. STANDARD OF REVIEW

The Defendants argue that the testimony of Plaintiffs' experts must be excluded under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and its progeny.

Fed. R. Evid. 702.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)).  In determining whether certain testimony is reliable, the "inquiry envisioned by Rule 702 is . . . a flexible one.  Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability of the principles that underlie a proposed submission.  The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 594-95. In Daubert, the Supreme Court

identified a non-exhaustive list of factors that may assist the Court in assessing the reliability of a proposed expert's opinion including: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592-94. This gatekeeping role is not limited only to expert testimony based upon scientific knowledge, but extends to "all 'scientific,' 'technical,' or 'other specialized' matters within" the scope of Rule 702. Kumho Tire, 526 U.S. at 147-48.

Whether the Court applies the Daubert factors to assess the reliability of the testimony of an expert witness "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. at 150 (quotation omitted). Again, Daubert is a flexible test and no single factor, even testing, is dispositive. See Kumho Tire, 526 U.S. at 151-52; Smith v. Ford Motor Co., 215 F.3d 713, 719 (7th Cir. 2000). However, "[n]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and opinion proffered." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). In addition to the Daubert factors, trial courts also may "take judicial notice of methods and techniques which already have been recognized by existing case law as reaching the status of scientific reliability." Goodyear Tire and Rubber Co. v. Thompson, 11 S.W.3d 575, 579 (Ky. 2000) (citing Johnson v. Commonwealth, 12 S.W.3d 258, 262 (Ky. 1999)).

### III. DISCUSSION

Both Defendant Rasche and Defendant American General have filed motions to exclude

Emily Will, Plaintiffs' handwriting expert. Defendant American General has also moved the Court to exclude Plaintiffs' experts Richard Weber, a life insurance salesman and consultant, and Burke Christensen, who has an extensive background in insurance sales. Plaintiffs have stated that Mr. Weber and Mr. Christensen are to testify as expert witnesses regarding American General's financial underwriting prior to issuing the policies. The Court will address each expert in turn.

**A. Emily Will**

The Plaintiffs have challenged the signatures of Harold and Donna Milligan on Part A of the life insurance application. Both Donna and Harold Milligan deny signing that part of the application and intend to offer proof that the "life insurance application, which committed them to pay a total of $8.25 million in premiums, was not signed by them." (Pls.' Response, 1 [DN 296].)

Defendant American General argues, first, that the authenticity of Donna Milligan's signature is not at stake in this litigation; and, second, Ms. Will is not qualified to give an expert opinion in forensic document examination. The Second Amended Complaint, Defendant American General states, never mentions signatures, forgery, fraud, or delivery of the policy, and Ms. Will's report does not relate to any of the counts asserted against Defendants. As to her qualifications, Defendant American General argues that her only training consisted in spending one week out of every four to six weeks over the course of a year and a half with an instructor who was self trained. While Defendant American General acknowledges that she holds a certificate from the Board of Forensic Document Examiners, it points out that the BFDE has only seventeen certificate holders, seven of whom are board members. Defendant Rasche also asserts that Emily Will does not have the necessary training to testify. Furthermore, Defendant Rasche argues that Will has not calculated a known or potential rate of error, her work in this case has not been subject to peer review, and

Emily Will's opinions are unreliable because she never spoke with Ms. Milligan or examined the original document.

In response, Plaintiffs state that the evidence in the case will demonstrate that Rasche paid very little attention to dealing with the documentation for the life insurance policies and the documentation of the transactions between the parties. They argue that Ms. Will's testimony relates to those issues. As to her qualifications, Plaintiffs assert that Ms. Will has worked as a full time forensic document examiner since 1988, she is certified by the National Association of Document Examiners; and has a certification from an academy that teaches TSA personnel how to identify forged documents. (Pls.' Resp. 9 [DN 296] (citing E. Will Dep. [DN 296-2].) Ms. Will obtained the designation of a certified document examiner by the BFDE, which is accredited by the Forensic Specialties Accreditation Board. Additionally, Ms. Will testified that she has been deposed in 30 to 40 cases, including a case in which the federal government retained her. Plaintiffs argue that the Defendants are challenging the weight, not the admissibility, that should be given to Ms. Will's testimony, which should be addressed on cross-examination.

"Expert testimony which does not relate to any issue in the case is not relevant . . . . " Daubert, 509 U.S. at 597. Under the relevance requirement "there must be a 'fit' between the inquiry in the case and the testimony, and expert testimony that does not relate to any issue in the case is not relevant and therefore not helpful." United States v. Bonds, 12 F.3d 540, 555 (6th Cir. 1993). Emily Will's report concludes that, after comparing five documents with the known signature of Donna B. Milligan, "it is highly probable that the questioned signature was not written by Donna B. Milligan[.]" (Examination of Documents [DN 284-5].) The only document in question was an AIG Policyowner Acknowledgment of Policy Delivery Form. Previously, the Court held

that claims of non-delivery were not pled in the Second Amended Complaint. (Memorandum Opinion and Order [DN 259].) The allegations in the Second Amended Complaint assert that Rasche misrepresented to the Plaintiffs the operation of and suitability of the financed premium life insurance scheme, they relied on Rasche's expertise to select the insurance policy financing mechanism, and he was negligent in not making arrangements for additional or alternative financing. The Court agrees that Emily Will's opinion on the signature on the AIG Policyowner Acknowledgment of Policy Delivery Form will not assist the trier of fact to understand the relevant evidence or to determine a fact in issue. The facts stated in the Second Amended Complaint confirm that Harold D. Milligan purchased the policy at issue, regardless of any delivery issues. Therefore, the Court finds that the expert opinion of Emily Will as to the handwriting on a single signature is excluded as it is not relevant to the issues in this case.

### B. Richard M. Weber

Richard Weber has been involved in the insurance industry for 45 years. For approximately 25 years he sold life insurance products. (Rebuttal Report of Richard M. Weber, 1 [DN 295-6].) He has served as President-elect of the Society of Financial Service Professionals and, on behalf of the society, also provides continuing education and ethics programs to life insurance agents and brokers. (Id. [DN 295-6].) Additionally, he has served as a Qualified Independent Assessor for the Insurance Marketplace Standards Association ("IMSA"), which is a voluntary standards setting organization that promotes "ethical market conduct and compliance standards for its qualified life insurance companies and their agents." (Id. [DN 295-6].) Plaintiffs hired Mr. Weber as an expert to rebut Defendant American General's expert reports on underwriting and the standard of care of a life insurance agent.

American General argues that Mr. Weber's opinion about suitability and affordability are not relevant to the issues in the case. Furthermore, American General states that Mr. Weber lacks the knowledge, skill, training or experience to qualify as an expert witness. It asserts that Mr. Weber does not have any training or experience to give an opinion on home office underwriting as he has never done any work as an underwriter, he can not provide standards for evaluating affordability, and he can not provide any authoritative text, treatise, or other writing to support his opinion regarding affordability. Defendant America General also asserts that there is no authority that the IMSA principles create any legal duties since it is a self-regulating, voluntary membership organization with aspirational principles. The Dodd-Frank Act also can not provide a foundation for Mr. Weber's opinion according to the Defendant because the law passed in 2010 and would not be applicable to the financial underwriting that would have taken place in 2006 and 2007.

In response, Plaintiffs state that the opinion of Mr. Weber is relevant to the negligent supervision claim against American General as the financial underwriting of the policies demonstrates that American General should have been questioning the Plaintiffs' ability to pay. While Plaintiffs agree that Mr. Weber has never worked as a financial underwriter, they argue that he has experience through serving on an executive committee of a major life insurance company and has even testified as an expert for American General.

First, the Court has already concluded that financial underwriting by American General is relevant to the Plaintiffs' negligent supervision claim. (See Memorandum Opinion and Order [DN 320] and Order [DN 321].) Second, as to Richard Weber's qualifications, the Court finds that he is qualified to discuss financial underwriting. "Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has]

a reliable basis in the knowledge and experience of the discipline.'" Jahn, 233 F.3d at 388. According to his resume, Richard Weber has worked in the insurance industry for 45 years with a focus on life insurance. Mr. Weber obtained an MBA with a speciality in Insurance and Finance from the University of California and has been published in several periodicals. He is a very active member of the Society of Financial Service professionals and a Qualified Independent Assessor for the Insurance Marketplace Standards Association. While he has never worked as a financial underwriter, that does not mean that he is not familiar with insurance company standards of financial underwriters. Defendant American General argues that he has no training or experience in the suitability of a financing agreement, but the Court finds that his experience in the life insurance field satisfies Rule 702's reliability requirement. As to his reliance on the Swiss Re guidelines and the Insurance Marketplace Standards Association, Kentucky courts have held that "in cases involving professionals or professions requiring special skill and expertise, the standard is typically measured by the standard of conduct customary in the profession under the circumstances." Boland-Maloney Lumber Co., Inc. v. Burnett, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009). The Court is aware that the Insurance Marketplace Standards Association is a voluntary membership organization, however, the Court finds the standards provide an example of the standard of care applicable to life insurance agents and companies. Defendant American General's arguments against Mr. Weber's testimony are appropriate for cross examination, but the IMSA will assist in determining the standard of care. Therefore, the Court holds that Richard Weber is qualified to give an expert opinion on financial underwriting. However, the Court agrees that Weber's testimony regarding the Dodd-Frank Act will not be relevant since it was not enacted at the time of the alleged negligent conduct.

### C. Burke Christensen

Burke Christensen obtained his Juris Doctrate in 1975 and since then has been employed in various positions including Vice President and General Counsel of Society for Financial Services Professionals; Vice President, Operations, and General Counsel of Quotesmith.com, an internet-based insurance brokerage agency; and Chief Operating Officer and General Counsel of Concert Health Plan Insurance Company. Currently, he holds the Robert B. Morgan Chair of Insurance at Eastern Kentucky University where he teaches classes in business law and ethics, risk management and insurance. Mr. Christensen has written three college textbooks on the law of insurance and has written over 150 articles on professional ethics, market conduct compliance, producer liability and the regulation of insurance. Plaintiffs asked Mr. Christensen to give an expert opinion regarding the insurance products sold to Plaintiffs.

Defendant American General argues that Mr. Christensen has no foundation in his experience to support his views on the suitability of a life insurance policy as he has no experience in either home office underwriting or third-party premium financing. It states that Mr. Christensen's "general connection and experience with insurance does not qualify him to offer specific, expert opinions on home office underwriting, its goals, what home office underwriters must or must not do, or what factors underwriters should take into account in a premium finance situation." (Def.'s Mot. to Exclude, 11 [DN 284].) Additionally, Defendant American General states that Mr. Christensen could not corroborate his positions with any recognized insurance industry guidelines and was unable to point to any documents or published literature to demonstrate that his opinions are widely accepted in the insurance community.

In response, Plaintiffs point to Mr. Christensen's past employment which consisted of

working as an attorney for the American Society of Chartered Life Underwriters, as well as his experience as general counsel and chief operating officer at Concert Health Plan, where he ran the company and the underwriting department reported to him. While Mr. Christensen has not worked as a home office underwriter, Plaintiffs argue he was required to learn the requirements of underwriters because he had to teach them at agent seminars and use them when working with agents.

The Court finds that Burke Christensen is qualified to give an expert opinion on financial underwriting due to his significant experience in the life insurance industry. As stated above, "[e]xperts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" Jahn, 233 F.3d at 388. Mr. Christensen may never have worked as an underwriter, but his background and testimony suggest he is very familiar with the topic. While Defendant American General and its experts disagree with Mr. Christensen, he testified that, in his opinion, the Swiss Re Guidelines support the practice of underwriters considering affordability when determining whether or not a policy should be issued. (See Christensen Dep. p. 99, 104 [DN 284-4, 295-2].) His opinion regarding the industry standards under the Swiss Re Guidelines is relevant to the case at present and the Court finds that he is qualified to give an expert opinion on these standards.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Lawrence Rasche's motion to exclude the opinions and testimony of Plaintiffs' expert, Emily Will [DN 277] is **GRANTED**, and Defendant American General's motion to exclude expert testimony of Richard M. Weber, Burke A. Christensen and Emily J. Will. [DN 284] is **GRANTED in part** and **DENIED in part**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 4, 2013

cc: counsel of record